UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

JAMES CHARLES DIPIETRO,　　　　　　　　　　　　　　No. 10-12329

　　　　　　　　　Debtor(s).
_____/

JAMES CHARLES DIPIETRO,

　　　　　　　　　Plaintiff(s),

　　v.　　　　　　　　　　　　　　　　　　　A.P. No. 10-1123

WACHOVIA MORTGAGE, FSB, et al.,

　　　　　　　　　Defendant(s).
_____/

Memorandum After Trial
_____

　　　Plaintiff and Chapter 13 debtor James DiPietro is a retired welder. Although his income is very modest, he provided for himself and his family for many years by riding the residential real property bubble. At least six times from 1998 to 2004, DiPietro refinanced or further encumbered his home at 1538 Laredo Street, Napa, California.

　　　In the spring of 2006, DiPietro literally fell in with thieves. He responded to a mailer sent to him by one "Transamerican Financial Company," a licensed mortgage broker, which offered a loan

1

with a fixed payment on terms which appealed to DiPietro, who had incurred about $40,000.00 in credit card and other debt since his last refinancing. What DiPietro did not know is that Transamerican was operated by very dishonest people.

Transamerican's mailer was touting a loan offered by World Savings and Loan Association, the predecessor in interest to defendant Wachovia Mortgage, FSB. World Savings and Transamerican had a continuing relationship during this time, with World designating Transamerican as a "Preferred Mortgage Broker." Transamerican brokered well over 100 loans with World as the lender.

What World did not know is that the loan applications submitted by Transamerican were in many cases entirely fictional, with made-up assets and income. These were supposedly signed by the potential borrower, but in fact the signatures were forged by Transamerican employees. This was the case with DiPietro's loan application. DiPietro was unaware of this conduct as well.

When DiPietro initially discussed the loan with a Transamerican representative, they discussed a loan with payments of about $850.00 per month. However, the appraisal of DiPietro's home came back higher than expected, justifying a larger loan. Assuming that DiPietro would be happy with a larger loan, Transamerican had the loan papers prepared for the maximum amount.

On May 10, 2006, two representatives of Transamerican visited DiPietro at his home along with a notary. They began signing loan documents, and DiPietro signed the note and deed of trust. However, when he got to the paper disclosing the payments they were higher than the $850.00 they had previously discussed, DiPietro balked and told them he did not wish to proceed with the loan. The Transamerican representatives tried to explain to DiPietro that the payments were higher because he was getting a larger loan, but DiPietro was adamant.

When they returned to their office, the Transamerican representatives completed the loan package by forging DiPietro's name to the documents he had not signed. They then submitted them into the loan escrow, which closed. Neither DiPietro nor World knew of this duplicity.

DiPietro received a check for some $47,000.00 from the escrow the day after it closed on May 16, 2006. He immediately sent it back to the title company. When it came back to him again, DiPietro

2

filed a police report and complained to the title company, which investigated his complaint, determined that some of the loan document signatures were forgeries, and contacted World. The title officer also called the holders of the two notes who were paid off out of the escrow, who expressed a willingness to undo the transaction and be restored to their prior positions.

At some time during the days following the close of escrow, DiPietro hired a lawyer who contacted World. On June 2, 2006, World's counsel sent the attorney a letter relating that the prior lenders were willing to cooperate in undoing the transaction and inquiring as to whether DiPietro desired to rescind or modify the loan.

However, evidently not know to either counsel, on May 24, 2006, DiPietro had called World and informed them that he was not going to contest the loan documents and would go ahead and make the loan payments. He also cashed the escrow check. Thus, due to the closing of the escrow World had paid off DiPietro's existing first and second deeds of trust and about $40,000.00 in unsecured debt as well as giving DiPietro $47,000.00 in cash.

In February, 2007, DiPietro evidently filed a complaint in state court - it is not part of the record. The case languished in state court until June 18, 2010, when DiPietro filed a third amended complaint in state court. Four days later, he filed his Chapter 13 petition. On September 20, 2010, he removed the state court action to this court.

The state court action contained multiple claims against multiple parties, some of whom were entitled to a jury trial. On June 30, 2011, the court remanded most of the claims back to state court. However, the court retained and set the equitable claims for trial for two reasons. First, there was no right to a jury on these issues so the court could try them promptly. Second, the rights of the parties had to be determined so that the Chapter 13 could proceed; until those rights were resolved, the court could not determine if DiPietro's Chapter 13 plan was confirmable.

Having heard all of the evidence, the court finds that by his conduct DiPietro has ratified the World loan so that, whatever rights he may have for damages, the note and deed of trust are fully enforceable. It is clear that within a few days of the loan escrow closing, when World learned that

3

some of DiPietro's signatures had been forged, it was able to rescind the loan. DiPietro's own witness established this fact. The evidence also shows that World was willing to do so. By calling World and telling them that he was accepting the loan, DiPietro deprived World of the opportunity to undo the loan and set the parties back to their original positions. He therefore is not entitled to equitable relief to undo the transaction.[1]

For the foregoing reasons, DiPietro will take nothing by the claims not remanded to state court and Wachovia will have a judgment declaring that the note and deed of trust are fully valid and enforceable. The judgment shall recite that it is without prejudice to all other claims and defenses DiPietro and the defendants may have other than those actually decided here. Each side shall bear its own fees and costs, unless the state court decides otherwise after hearing the balance of the lawsuit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Wachovia shall submit an appropriate form of judgment forthwith.

Dated: July 29, 2011

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[1] The court speculates, based on its observed demeanor of DiPietro, that he was initially angered that the loan had closed against his wishes, but soon realized that the payments were larger because the loan was larger, there was no loan anywhere available to him on better terms given his meager income, that he need the loan to pay off his debts, and that he liked having the $47,000.00.

4

# CERTIFICATE OF MAILING

I, the undersigned, a regularly appointed deputy clerk of the United States Bankruptcy Court for the Northern District of California, at Santa Rosa, hereby certify:

That I, in the performance of my duties as such clerk, served a copy of the foregoing document by depositing it in the regular United States mail at Santa Rosa, California on the date shown below, in a sealed envelope bearing the lawful frank of the Bankruptcy Judge, addressed as listed below.

Dated: July 29, 2011          By : _____Katie Andersen_____
                                    Katie Andersen
                                    Deputy Clerk

Transamerica Financial Corporation
9968 Hibert St, #104
San Diego, CA 92131

Svetlana Conway
7192 Kalanianaole Hwy, #G 231
Honolulu, HI 96825

Dirk Kuivenhoven
8830 Heavens Gate Ln
Newcastle, CA 95658

James H. Duncan, Jr.
Fidelity National Law Group
100 N. Wiget Lane #150
Walnut Creek, CA 94598

Dave M. McGraw
2890 North Main St., Suite 307
Walnut Creek, CA 94597-2738

Lee Bardellini
Bardellini, Straw et al.
2000 Crow Canyon Place
San Ramon, CA 94583

Stephen J. Thomas on behalf of Plaintiff James DiPietro
Law Offices of Stephen J. Thomas
1219 Coombs St. #D
Napa, CA 94559